**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

FILED
RICHARD W. NAGEL
CLERK OF COURT
2021 JUN 23 PM 1:12
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

**United States of America,**

v.                                                              Case No. 2:18-cr-204(2)

**Charles Carson,**                                  Judge Michael H. Watson

**Defendant.**

## OPINION AND ORDER

Charles Carson ("Defendant") was indicted for engaging in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d) and for murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), (2). Indictment, ECF No. 19. Defendant faced a possible capital sentence if convicted.

Due to the number of defendants (nineteen) and counts (seven), the death specifications, and the complexity of the charges in this case, the Court declared this a complex case at the request of a co-defendant. Order, ECF No. 165. The Court then established a deadline by which the death-eligible defendants, including Defendant, would present mitigation evidence to the United States and a deadline for the United States to file its notice of intent to seek (or not seek) death. Case Mgmt. Order, ECF No. 174. Discovery commenced. See, e.g., ECF Nos. 174, 189, 192.

In February 2019, Defendant signed a plea agreement wherein he agreed to plead guilty to Count I, racketeering conspiracy. Plea, ECF No. 442. After Defendant signed the plea agreement but before his change of plea hearing, the Government filed a notice that it would not seek the death penalty against

Defendant.[1] Notice, ECF No. 439. Defendant then pleaded guilty in open court on February 12, 2020, before Magistrate Judge King, who recommended this Court accept that guilty plea. Minute Entry, ECF No. 459; R&R, ECF No. 460. Defendant had fourteen days to object to the report and recommendation but chose not to. Thereafter, the Court accepted Defendant's guilty plea but deferred acceptance of the plea agreement. Order, ECF No. 475. The Presentence Investigation Report was completed, and the matter was scheduled for sentencing.

On August 5, 2020, fifteen days before the date set for Defendant's sentencing and after both the Presentence Investigation Report was completed and the Government filed its sentencing memoranda, Defendant moved to withdraw his guilty plea. Mot., ECF Nos. 557, 558. Defendant's motions asserted that: (1) he pleaded guilty without fully understanding what he was admitting to; (2) he believed he would receive the death penalty if he did not plead guilty; and (3) he was innocent of the charges. Mot., ECF No. 557. Defendant's lawyer supplemented the *pro se* motion, noting that Defendant also "d[id] not feel that he adequately understood that the plea agreement would require [him] to serve a full thirty years in prison." Mot. 2, ECF No. 558. Counsel also suggested the novel coronavirus ("COVID-19") that affected the world in 2020 was an intervening circumstance that warranted withdrawal. *Id.* at 2–4.

The Government opposed Defendant's motion. Resp., ECF No. 560. The Government pointed out that, although Defendant signed the plea agreement before

---

[1] Defendant's willingness to plead was one factor that went into the decision whether to seek the death penalty. 10/28/20 Tr. 14:21–15:4, ECF No. 605.

the Government filed its notice of intent not to seek the death penalty, Defendant did not actually plead guilty in open court until after the notice was filed, which undercut Defendant's argument that his plea was induced by a false belief that he faced a potential death sentence if convicted. *Id.* at 2. The Government also pointed to the delay in the filing of Defendant's motion, argued COVID-19 was not a valid reason for withdrawing a guilty plea, said Defendant consistently accepted the statement of facts as true, asserted Defendant was apprised that he would serve thirty years under the agreement during the plea colloquy, and noted that Defendant is familiar with the criminal justice system and guilty pleas (especially since he pleaded guilty in state court to conduct charged as part of the RICO conspiracy charged here). *Id.* at 4–7. Finally, the Government argued it would be prejudiced if Defendant was permitted to withdraw his plea. *Id.* at 7.

The Court held a hearing on the date scheduled for sentencing and discussed the seven factors a court must consider when determining whether a defendant has offered a fair and just reason for requesting to withdraw a guilty plea. 8/20/20 Tr. 5:10–18:5, ECF No. 604; *see also* Fed. R. Crim. P. 11(d)(2)(B) ("A criminal defendant may withdraw a guilty plea after the court accepts it but before sentencing 'if . . . the defendant can show a fair and just reason for requesting the withdrawal.'"); *United States v. Goddard*, 638 F.3d 490, 494 (6th Cir. 2011) (listing the seven factors for consideration). The Court orally denied Defendant's motion and followed up the oral order with a written order. 8/20/20 Tr. 18:2–5, ECF No. 604; Op. and Order, ECF No. 564.

The Court concluded that the first factor (the amount of time elapsed between the plea and motion) weighed against Defendant. In doing so, the Court gave Defendant the benefit of the doubt and found that his "motion" was filed on April 27, 2020, the date he first asked counsel to move to withdraw his plea, even though the motion was not actually filed until August 5, 2020. 8/20/20 Tr. 6:10–7:12, ECF No. 604 ("I will put it on me that any delay from [April 27, 2020] is likely attributable to defense counsel and not the defendant as we were trying to work with him to keep the plea in place."); Op. and Order 2–3, ECF No. 564. Still, the Court concluded that a delay of two months between the date Defendant entered his plea in Court and the date he "moved" (by asking counsel to move to withdraw the plea) weighed against Defendant. *Id.* at 3.

The Court also concluded in regard to the second factor that Defendant lacked a valid reason for failing to move earlier in the proceedings. On this point, the Court found first that Defendant's delay was not attributable to the Government's notice not to seek the death penalty, which was known before Defendant formally entered his guilty plea in court. 8/20/20 Tr. 11:8–12, ECF No. 604. The Court also rejected COVID-19 as a fair and just reason to withdraw the plea or a valid reason for the delay, noting that Defendant would remain detained even if his plea was withdrawn, so there was no reason not to move earlier. *Id.* at 11:13–19; Op. and Order 3–4, ECF No. 564.

The Court also found the third factor (whether Defendant had asserted or maintained his innocence) weighed against granting the motion because Defendant signed the plea agreement, pleaded guilty before the magistrate judge, failed to

timely object to her report and recommendation, and waited until just before sentencing to assert his innocence. 8/20/20 Tr. 11:20–13:7; 14:18–16:8, ECF No. 604 (Government reading from plea colloquy and statement of facts); Op. and Order 4–5, ECF No. 564.

As for the fourth factor (the circumstances underlying the guilty plea), the Court concluded that the plea was knowingly and voluntarily entered. 8/20/20 Tr. 13:10–16:4, ECF No. 604; Op. and Order 5, ECF No. 564.

The Court further concluded that the fifth and sixth factors (Defendant's nature and background and his prior experience with the criminal justice system) also weighed against granting his motion because he had previously pleaded guilty in state court and had a high school diploma. 8/20/20 Tr. 16:9–17:4, ECF No. 604; Op. and Order 5–6, ECF No. 564.

The Court then found the Government would be prejudiced if Defendant withdrew his plea, noting the Government had been strategizing and preparing for trial for months, focused only on evidence relating to the remaining co-defendant, and might have to start trial preparation over with a lens toward evidence relating to Defendant should he go to trial. Further, the Government might be hampered in its ability to bring back for testimony co-defendants who have already been sentenced. 8/20/20 Tr. 17:5–15, ECF No. 604; Op. and Order 6, ECF No. 564.

Having concluded that each of the seven factors weighed against granting Defendant's motion, the Court denied the same. 8/20/20 Tr. 17:24–18:5, ECF No. 604; Op. and Order 6, ECF No. 564. Because Defendant had not discussed the potential waiver of his right to appear in person for sentencing and had not agreed to

proceed with sentence via videoconference, however, the Court reset the matter for sentencing. 8/20/20 Tr. 18:11–20:16, ECF No. 604; Op. and Order, ECF No. 564.

Eight days before Defendant's rescheduled sentencing, he mailed a letter to the Court again attempting to withdraw his guilty plea ("10/20/20 Letter"). Letter, ECF No. 586. This time, Defendant argued that ineffective assistance of counsel constituted a fair and just reason to permit him to withdraw his plea.[2] *Id.* Defendant argued that his attorneys: (1) failed to inform him when the Government filed a notice not to seek the death penalty (and, thus, he pleaded under the erroneous fear that he could face a death sentence if convicted), (2) failed to inform Defendant that the Government would have to prove elements beyond murder in order to secure a conviction (*e.g.*, that Defendant was part of an enterprise engaged in or affecting interstate commerce), (3) lied to him about how long he would serve in prison if he pleaded guilty, and (4) scared and coerced him into pleading guilty. *Id.*

At the sentencing hearing, the Court heard further argument from Defendant, his counsel, and the Government regarding Defendant's desire to remove counsel and withdraw his guilty plea. 10/28/20 Tr., ECF No. 605. During the hearing, Defendant stated that his plea was unknowing because he misunderstood whether he faced a potential death penalty at the time of his plea and misunderstood whether

---

[2] Whether former counsel provided ineffective assistance of counsel, which is doubtful, may be raised in a postconviction motion, but the merits of such a claim are not before the Court at this time. The issue is whether counsel's advice, regardless of whether it amounts to ineffective assistance of counsel, provides a fair and just reason for permitting Defendant to withdraw his guilty plea. The Court notes this solely to clarify that *Strickland* is not the proper analysis for this determination. *See* Gov. Br. 4, ECF No. 624 ("The challenge to his guilty plea had now apparently shifted from the application of the *Bashara* factors . . . to a formal *Strickland* analysis . . .").

it was *necessary* to plead in order to secure the notice of "no intent." *Id.* at 12:4–15:16. He also stated that there was a misunderstanding regarding how much time he would actually serve in prison if he pleaded guilty to an 11(c)(1)(C) plea with an agreed sentence of thirty years' imprisonment; namely, Defendant understood that he would serve only seventeen years in prison notwithstanding the plea. *Id.* at 5:9–20. Defendant's counsel admitted[3] that he likely advised Defendant, prior to Defendant pleading guilty, that Defendant would serve only seventeen years in prison notwithstanding the thirty years agreed to in the plea agreement. *See id.* at 5:24–10:4 (*e.g.*, "I would not dispute that I probably made a representation in that neighborhood. . . . So, his representation in that regard is probably true that I probably did tell him that he was looking in the real world at a 17 as opposed to a 30-year sentence."). After a sidebar on the issue of whether Defendant knew about the notice of non-intent to seek the death penalty before he pleaded guilty in court, the Court granted Defendant's motion to substitute counsel. *Id.* at 15:18–18:7. Specifically, the Court noted that it had already ruled on Defendant's motion to withdraw the guilty plea and that its "ruling today [is] that [Defendant's] counsel is thanked and relieved." *Id.* at 19:16–19.

Thereafter, the Court appointed new counsel for Defendant, Order, ECF No. 593, and rescheduled the case for sentencing. The day before the rescheduled sentencing, Defendant's current counsel supplemented the previously denied motion to withdraw guilty plea. Mem., ECF No. 606. That memorandum, filed by counsel,

---

[3] Neither counsel nor Defendant were speaking under oath.

restated verbatim a letter that counsel had received from Defendant.[4] *See id.* at Ex. A.

At the rescheduled sentencing hearing, the Court permitted Defendant's new counsel to speak to the renewed motion to withdraw guilty plea. *E.g.*, 3/4/21 Tr. 5:7–8:13, ECF No. 629. Counsel argued again that Defendant should be permitted to withdraw his guilty plea because "[h]is plea was predicated upon . . . a misunderstanding as to certain facts that influenced the decision that he made. And that misunderstanding seems to have been confirmed in part by some of the comments made by his former counsel at the hearing in which the Court . . . allowed counsel to withdraw[.]" *Id.* at 5:17–22. Counsel again referred to the misunderstanding about the necessity of pleading guilty in order to remove the death penalty as a possibility and argued that Defendant's misunderstanding that he *had* to plead guilty in order to avoid the death penalty was "not only just a strong influence but . . . the only factor that he relied upon or the only factor that caused him to enter the plea as he did." *Id.* at 7:3–6. Counsel also discussed the misunderstanding, based on prior counsel's advice, that Defendant would serve only seventeen years in prison despite agreeing to a thirty-year sentence. *Id.* at 7:7–25, 13:20–17:24. Defendant similarly described it:

---

[4] To clarify the record in the event of an appeal, the Court notes that although the memorandum refers to Exhibit A as the previously stricken correspondence, that reference appears to be a mistake. What the Court struck from the record was Defendant's *pro se* motion to dismiss, ECF No. 581. It docketed Defendant's correspondence to the Court, ECF No. 586. The letter attached to counsel's motion in ECF No. 606 appears to be a different letter than the one sent to the Court and docketed as ECF No. 586. The Court has no record of ever having received the letter attached as Ex. A other than as part of ECF No. 606. Additionally, the reference to ECF No. 583 was also a mistype, as ECF No. 583 was filed by a co-defendant.

> I understood that the plea deal's for 360 months but the way that he explained it to me was that you don't do all your time in the feds is what he explained to me. He didn't explain to me exactly how it break down but he told me I wouldn't be doing the whole 360 months. The number he told me to make me sign the plea deal was 17 and a half years. That was his exact number, he said it will break down for 17 and a half years.
> I didn't think that that was a promise from some outside force or anything like that. I thought that that went along with the whole plea deal. So that's why I told [the magistrate judge] yes, ma'am, because I didn't know that it was something different that was being promised to me. I assumed that it all went in with . . . the number that the prosecution came up with and that my lawyer came up with.

*Id.* at 20:6–20.

The Court was in the process of concluding that "there [wa]s enough confusion in the record about what [Defendant] understood at the time [he] signed the plea agreement and entered the guilty plea to, in the interest of justice, require [the Court] to grant [the] withdrawal of guilty plea" and advising Defendant that he would go to trial, *Id.* at 23:3–7, when the Government requested an evidentiary hearing. The Government suggested that such a hearing could clear up any confusion about whether Defendant's prior counsel had advised Defendant that the plea agreement would result in Defendant serving approximately seventeen years, rather than thirty years, and whether that was a basis of Defendant's agreement to plead guilty. *Id.* at 23:11–18. The Court agreed to first hold an evidentiary hearing before definitively deciding whether to permit Defendant to withdraw his plea. *Id.* at 24:19–25:1.

The Court thereafter held said evidentiary hearing in April 2021. 4/13/2021 Tr., ECF No. 619. The parties have both filed post-hearing briefs, ECF Nos. 624, 625, and the motion is ripe.

The Court begins its analysis by reiterating that, in previously denying Defendant's motion to withdraw his guilty plea—both orally and in writing—the Court concluded that all seven factors weighed against finding a fair and just reason for requesting the withdrawal. The only factor implicated by the confusion regarding how much time Defendant would actually spend in prison under the plea agreement is factor four: the circumstances underlying the guilty plea. Specifically, the confusion goes to whether Defendant knowingly entered the guilty plea or whether he entered the plea based on a misunderstanding. Regardless of the outcome of that analysis, the other factors continue to weigh against granting Defendant's motion.

To reiterate this point, the motion was brought over a year after he signed the plea agreement, two and a half months after he pleaded guilty in Court, and two months after the Court accepted his guilty plea—and that calculation gives Defendant the benefit of considering April 27, 2020, the date he first told counsel he wanted to withdraw his plea, as the date of his motion. None of the subsequent events make the Court rethink its conclusion that Defendant lacked a valid reason for failing to move earlier, so the first two factors continue to weigh against granting the motion.

The same is true for Defendant's innocence. The Court's conclusion regarding that factor is unaffected by the subsequent events and arguments concerning any misunderstanding between Defendant and his former counsel. In fact, this conclusion is buttressed by Defendant's subsequent letters to the Court in which he asserts that the basis of his current assertion of actual innocence is his

Case No. 2:18-cr-204(2)                                                                 Page 10 of 17

current belief that the gang in question did not constitute a RICO enterprise. 10/20/20 Letter, ECF No. 586 ("This is where my claim of actual innocence comes from. The enterprise in question Trevitt and Atchetson [sic] did not begin to affect commerce until the summer of 2015 according to the Government[']s statement of facts. Even if they could prove I did my charges they couldn't prove I did them for an enterprise as defined in the statutes."). Defendant reached this belief after meeting and speaking with a co-defendant in Butler County Jail. 4/13/21 Tr. 35:8–9, ECF No. 619 ("He talked to me about the fact that y'all have to prove there is an enterprise.").

Similarly, Defendant's nature and background, familiarity with the criminal justice system, and the prejudice to the Government are unchanged.

The Court's analysis herein is therefore limited to determining whether Defendant was operating under a misunderstanding when he entered into his plea such that the fourth factor might weigh in his favor. The Court finds it does not.

At the evidentiary hearing, Defendant testified consistently with his prior statements that former counsel informed him that pleading to a term of thirty years' imprisonment would actually result in serving seventeen and a half years in prison and that he pleaded guilty based on that understanding. *Id.* at 13:2–14:21, 15:24–16:5, 22:13–24:8, 27:21–28:4, ECF No. 619. Thus, Defendant asserts he entered into the plea based on a fundamental misunderstanding about the amount of time he was agreeing to spend in prison.

However, former counsel testified that, despite the representations counsel made at the October 28, 2020, hearing, his notes did *not* reflect ever discussing

good-time credit with Defendant. *Id.* at 54:23–55:13, ECF No. 619. Ultimately, counsel testified that, although "it is entirely possible that" counsel notified Defendant of the possibility of receiving good-time credit, he does not believe he would have done so given his usual practice and the fact that Defendant's offense might be classified as an offense of violence, precluding him from receiving the credit. *Id.*; *id.* at 55:17–23 ("I don't promise things, especially good-time credit"), *id.* at 56:25–57:2 ("I've never heard 17 years until we were in court. And the last time we were in court was the first time that I heard 17 years."); *id.* at 57:13–14 ("I can't find anywhere in my notes—the number 17 is nowhere in our notes at all."); *id.* at 57:18–20 ("I would have told him 23, which is consistent with everything else. Twenty-three is my shot and 23 is what I think I can get to."); *id.* at 72:3–5 ("I don't believe it is [a conversation I had with Defendant] because, in going back through my notes, I find no reference to good-time credit. And that's the part I can't fit."). In any event, counsel testified that if he discussed good-time credit with Defendant, he would have advised Defendant that the credit, if earned, would amount to sixty days for each year. *Id.* at 55:11–13. Counsel was adamant that he did not promise Defendant that Defendant would receive any good-time credit, however. *Id.* at 14–23.

In addition to discussing good-time credit, counsel also testified about the impact that receiving credit for time served on the state sentence could have on Defendant's federal sentence. Counsel expressly disavowed, however, that the calculation of serving seventeen years on a thirty-year sentence arose during discussions about credit for time served. *Id.* at 69:13–20 ("Q. And it was within the

contents of that discussion [about credit for the time that he was serving on the related state charges] that the 17 years came about. Is that a fair statement? A. No.").

Importantly, counsel testified that, during all of the discussions he had had with Defendant about withdrawing his guilty plea, Defendant never mentioned a misunderstanding about the thirty years' versus seventeen years' imprisonment as a reason for wanting to withdraw his plea. *Id.* at 70: 14–17 ("That wasn't even part of the basis to withdraw his plea. Having met with him all those times, he still hadn't mentioned that, so it wasn't something I ever looked at or went back and tried to figure."); *id.* at 56:25–57:2 ("I've never heard 17 years until we were in court. And the last time we were in court was the first time that I heard 17 years.").

Similarly, former co-counsel testified that in discussing the terms of the proposed plea deal with Defendant before it was signed, they explained that Defendant would likely serve an additional twenty-three years (from the date of sentencing) on the thirty-year sentence—not seventeen—after applying credit for time already served. *Id.* at 78:18–22 ("Mr. Sanderson discussed the fact that if the time ran concurrent with the sentence he was currently in on, he'd already served five years of that case, there were two years remaining so it would be 23 additional years on the federal case. I do have those specific numbers in my notes.").

Former counsel also testified that he discussed with Defendant the Government's notice of no intent to seek the death penalty at least twice before Defendant pleaded guilty in Court. *Id.* at 59:6–9.

It would be an understatement to say the record is muddy with respect to whether former counsel advised Defendant, prior to pleading guilty, that a plea agreement with a stipulated sentence of thirty years' imprisonment would amount, in the real world, to a sentence of seventeen and a half years. However, "Defendant has the burden of establishing, by a preponderance of the evidence, that it would be fair and just to grant the motion to withdraw the guilty plea." *United States v. Honegger*, No. 87-4134, 1988 WL 90876, at *1 (6th Cir. Aug. 31, 1988) (citation omitted). Based on the record, the Court does not find Defendant met his burden in showing that the fourth—let alone any other—factor weighs in his favor, for several reasons.

First, it is unclear what counsel advised regarding the length of sentence. The fact that former counsel's notes lack any mention of discussing the possibility of serving seventeen years and the testimony that Defendant never raised any misunderstanding about the alleged discrepancy in any discussion with former counsel prior to the October 28, 2020 hearing particularly undercut Defendant's factual assertion that he entered the plea based on a misunderstanding regarding the amount of time he would serve. Moreover, the record is clear that counsel told Defendant that the Government was not seeking the death penalty before Defendant pleaded guilty in court, and the Court finds Defendant was not under a misunderstanding about the death penalty when he pleaded guilty.

In any event, regardless of what counsel may have advised Defendant regarding the length of imprisonment prior to pleading guilty in court, Magistrate Judge King, who took Defendant's guilty plea in this case and issued a Report and

Recommendation recommending the Court accept the same, specifically advised Defendant that the plea agreement "calls for a term of imprisonment of 360 months or 30 years" and would be "served concurrently with the current *remaining term* of the sentence which [Defendant was] currently serving." 2/12/20 Tr. 3:15–21, ECF No. 561. In order to ensure Defendant made the plea "with a full understanding of the consequence of the plea of guilty," *id.* at 5:2–3, Magistrate Judge King also read the elements the Government would have to prove at trial to obtain a conviction (including the requirement of proving an enterprise engaged in or affecting interstate or foreign commerce). *Id.* at 7:25–8:24. Before pleading guilty, Defendant stated that he understood the Government would have to prove those elements. *Id.* She also advised Defendant, and he stated he understood, that Judge Watson would sentence Defendant to the agreed-upon sentence if the Court accepted the plea agreement. *Id.* at 10:12–22, 11:25–12:3; *see also id.* 18:13–21 (Government explaining the plea agreement's stipulated sentence of thirty years and agreement that the sentence would run concurrently to any undischarged term of imprisonment Defendant was serving on a state conviction). Defendant also testified that no one made any promises or assurances other than what was contained in the plea agreement and that he was not threatened or forced to plead guilty. *Id.* at 23:18–24. The specificity of the sentence contained in the plea agreement itself, the statements made during the plea hearing, and Defendant's attestation that he understood the same further undercut Defendant's assertion that he misunderstood any aspect of his plea agreement.

At bottom, after a thorough review of the record, the Court does not find the fourth factor, the circumstances surrounding Defendant's plea, support withdrawal.

In addition, regardless of whether the fourth factor weighed in favor of Defendant, the Court reiterates that the remaining factors each weigh against granting relief. It is also suspicious that Defendant never expressed a desire to withdraw his guilty plea until after he was transferred to a facility where the sole remaining defendant slated for trial is held and started discussing the charges with that defendant. 4/13/21 Tr. 33:23–35:13, ECF No. 619. It is further suspicious that the basis of Defendant's purported misunderstanding has shifted throughout the various motions and statements in court. These observations further suggest that Defendant's proffered basis for withdrawing his plea are manufactured such that it would not be fair and just to permit the withdrawal.[5]

Because Defendant has not shown by a preponderance of the evidence a fair and just reason for granting the withdrawal, the Court need not reweigh the prejudice to the Government. However, in the alternative, the Court finds that even if Defendant established a fair and just reason for withdrawal, the prejudice to the Government would be great. Trial is scheduled in September 2021. It would necessarily need to be delayed if the Court granted Defendant's motion because Defendant's new counsel has not reviewed any of the discovery in this case. The

---

[5] The Court pauses here to note that it is becoming increasingly common for defendants to enter guilty pleas and then, later, assert an issue with counsel as a reason to withdraw the plea. In fact, in this case a co-defendant moved to withdraw his plea, asserting that *his* counsel made the exact same representation regarding spending seventeen years in prison. Although the Court rules based on the facts of *this* case and not co-defendant's, it is suspicious that various co-defendants are now asserting that their separate counsel provided the same, allegedly incorrect advice.

Government would also have to take time to prepare its case against Defendant and, in doing so, might face trouble as various co-defendants pleaded and were sentenced with the understanding that the Government would not need to present a case against Defendant. This prejudice supports denying Defendant's motion.

For all of the above reasons, the Court **DECLINES** to reconsider its prior Opinion and Order denying Defendant's motion to withdraw his guilty plea.

Defendant's current counsel has notified the Court of a potential conflict of interest that was discovered in the course of preparing Defendant's post-hearing brief. Notice, ECF No. 622. The conflict would arise if Defendant's case proceeded to trial. *Id.* Given that Defendant will not proceed to trial and the Court will be bound by the stipulated sentence negotiated by prior counsel, the Court herein accepts the plea agreement and finds there is no conflict to counsel continuing to represent Defendant through sentencing.

The Court will reset this matter for sentencing.

**IT IS SO ORDERED.**

_____
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT